AMF INCORPORATED, Respondent, v ALGO DISTRIBUTORS, LTD., et al., Appellants.

Second Department, June 9, 1975

*Tate & Tate (Rex S. Ruthman* of counsel), for appellants.

*Rogers Hoge & Hills (Kenneth L. Everett* of counsel), for respondent.

MARTUSCELLO, J. The defendants appeal from an order which denied their motion to vacate an order of attachment. This appeal raises for review the question whether an ex parte order of attachment, entered without notice to the debtor and without an opportunity for him to be heard, violates the mandates of the due process clause of the Fourteenth Amendment of the Constitution of the United States. More particularly, the defendants challenge the constitutionality of our State attachment procedure when the ground

supporting the order of attachment is an alleged cause of action for conversion.[1]

The following are the essential facts. The defendant Algo Distributors, Ltd. (Algo) is a distributor of some of the products manufactured by the plaintiff, AMF Incorporated (AMF). On July 31, 1972 the plaintiff and Algo entered into an agreement whereby AMF acquired a security interest, later perfected, in all inventory sold to Algo, including the proceeds realized from any resale thereof by Algo. This security interest was given to secure the performance of the covenants and obligations of the agreement and to secure the payment of an indebtedness in the face amount of $150,000. The agreement further provided that Algo "shall have the right in the ordinary course of business to resell the goods to others and to otherwise deal with the goods in any manner which does not impair, reduce the company's [AMF's] security interest in the goods, but Debtor covenants to account to Company for the proceeds of any goods upon request."

Having accepted delivery of the plaintiff's products to be used in its business inventory, pursuant to the terms of the security agreement, Algo, acting through its president, defendant Alan Swartz, and by its vice-president, defendant George Swartz, on February 1, 1973 made and delivered to AMF its promissory note, in the face amount of $113,000, payable on November 10, 1973. The note was signed by the above-mentioned individual defendants in their corporate capacities.

Subsequently, a sale of most of the inventory covered by the security interest occurred. However, Algo refused to turn over any of the proceeds thus realized to AMF and, moreover, defaulted on its promissory note.

On February 13, 1974 the plaintiff obtained an ex parte

---

1. CPLR 6201 provides, in pertinent part:

"An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when: * * *

"8. There is a cause of action to recover damages for conversion of personal property, or for fraud or deceit." The Special Term granted the order of attachment on three of the grounds specified in CPLR 6201, to wit: subdivisions 4, 6 and 8. Since the defendants' constitutional argument was addressed solely to CPLR 6201 (subd 8), the Special Term found it unnecessary to reach that issue. On appeal, the plaintiff concedes that the seizure of the defendants' property cannot be justified on the basis of subdivisions 4 or 6 of CPLR 6201. We agree that the attachment can only be upheld on the basis of subdivision 8.

order of attachment against the property of all of the defendants. The summons, verified complaint and order of attachment, together with the affidavits submitted in support of that application, were served upon the defendants on February 19, 1974. The complaint sets forth three causes of action. In its first cause of action, which is against Algo, AMF seeks, *inter alia,* a judgment of foreclosure of its lien on the collateral, including the proceeds from the sales of any collateral. By its second cause of action, the one here pertinent, the plaintiff seeks, *inter alia,* to recover damages from all of the defendants for the alleged conversion by them of the proceeds of the sale of the inventory (collateral) acquired by Algo pursuant to the security agreement. In its third cause of action, AMF seeks judgment against Algo for nonpayment of the promissory note, which became due on November 10, 1973.

On February 28, 1974 the defendants moved to vacate the order of attachment on the grounds that the papers upon which the order of attachment was granted were insufficient in that they failed to show that a cause of action for conversion existed in favor of the plaintiff against all of the defendants and that any ex parte attachment based upon subdivision 8 of CPLR 6201 is unconstitutional. Their motion was denied. The defendants now raise the same arguments on appeal.

First, we turn to a consideration of whether the papers submitted in support of the application for the warrant of attachment were legally sufficient and spelled out a cause of action in conversion against all of the defendants. CPLR 6212 (subd [a]) requires a creditor to show by affidavit[2] and other written evidence that a cause of action in favor of a movant exists and to state the ground specified in CPLR 6201[3] under which the order of attachment is sought. If the complaint and affidavits fail to establish a prima facie cause of action in conversion against each defendant the order of attachment must be vacated, either *in toto* or as to the particular defendant against whom such a showing is not made (see *American Reserve Ins. Co. v China Ins. Co.,* 297 NY 322; *Zenith Bathing Pavilion v Fair Oaks S. S. Corp.,* 240 NY 307; *Stines v Hertz Corp.,* 22 AD2d 823, affd 16 NY2d 605).

In its complaint the plaintiff alleges that the defendants

---

2. We note that a verified complaint may be treated like an affidavit and used by the movant to establish the fact that a cause of action exists (see CPLR 105, subd [s]).

3. Although the statute refers to CPLR 6203, that is an apparent legislative mistake; the reference was clearly intended to be to CPLR 6201.

Alan, George and Mildred Swartz were officers and shareholders of Algo. No such allegation, however, was made with regard to the other individual defendant, Marion Swartz. It is also alleged that the defendants, in violation of the terms of the security agreement, knowingly converted the proceeds from the sale of the collateral in which AMF had a security interest to their own use and unlawfully distributed those moneys to the individual defendants as payment of salary owed to them. Attached to the complaint, and made a part thereof, were the security agreement signed by George Swartz and the promissory note signed by George and Alan Swartz in their corporate capacities.

In addition to the verified complaint, the plaintiff submitted the supporting affidavit of Harold Suffel, AMF's regional sales manager, who had dealt with Algo on a regular basis. He deposed that in October, 1973 he met with the defendants George and Alan Swartz at Algo's place of business and discussed with them a sale that the corporate defendant had conducted, as advertised in a local newspaper. Mr. Suffel averred that both of those defendants admitted that they had in fact caused a sale to take place in which most of the inventory subject to the security agreement had been sold, through a dealer, to buyers who attended the sale. George Swartz told Suffel that the proceeds of the sale had been received in the form of cash. From the quantity of merchandise which Alan Swartz admitted had been sold, Suffel determined that approximately $62,000 in cash had been received by Algo from the sale. As a result of this computation, Suffel demanded that an immediate payment of at least $50,000 be made to the plaintiff, which request was refused. Instead, George Swartz allegedly told him that all of the moneys received from the sale had been disbursed for the general business purposes of Algo.

On the basis of the foregoing pleadings, we find that a prima facie cause of action has been spelled out against the defendants George and Alan Swartz, but not as against Mildred and Marion Swartz. As we have recently reiterated, in order to establish a cause of action for conversion two things must be shown: first, the plaintiff must demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing (i.e., specific money); and, second, it must be shown that the defendant exercised unauthorized dominion over the thing in question, to the exclusion of the

plaintiff's rights (see *Independence Discount Corp. v Bressner,* 47 AD2d 756). In the present case, the plaintiff's papers sufficiently establish the existence of a security interest in the collateral and in the proceeds of any sale thereof, the sale of the collateral, the failure by George and Alan Swartz to pay over the proceeds on behalf of Algo upon proper demand therefor and the diversion of the proceeds for general corporate purposes. The crucial issue here is whether the plaintiff had an immediate right to possession of specific moneys. We believe that the express terms of the security agreement created such a right. Under its terms the debtor covenanted to "account to * * * [plaintiff] for *the proceeds* of any goods upon request" (emphasis added). Algo, therefore, obligated itself to pay over, upon demand by the plaintiff, the specific proceeds derived from the sale of all merchandise covered by the security agreement.

Indeed, the facts as alleged by the plaintiff are strikingly similar to those present in *Independence Discount Corp. (supra).* The creditor therein financed the purchase of inventory by the defendant corporation and, pursuant to a security agreement, obtained a security interest in the inventory and in the proceeds from any sale thereof. The inventory was subsequently sold and the proceeds were commingled with the general corporate funds of the debtor. The debtor thereafter went into bankruptcy. The creditor then instituted an action in conversion against the two principal officers and majority shareholders of the defendant corporation. We held that no cause of action in conversion existed. That decision, however, does not require a similar result in this case. The crucial distinction is to be found in the difference between the terms of the security agreements involved in these cases. The agreement in *Independence* did not impose upon the debtor the obligation to account for specific moneys derived from the sale of the inventory. Rather, it merely provided that upon such sale the debtor was to pay immediately "all amounts due [plaintiff] with respect to the Products financed * * * [thereunder]." Unlike the case here, no specific fund from which the money owed to the creditor would be paid was intended to be created.

In fact, the case at bar comes within the ambit of the holding in *Hinkle Iron Co. v Kohn* (229 NY 179). In *Hinkle,* the defendant corporate president assigned to the plaintiff the sum of $4,500, representing part of a designated payment

which was to become due to the corporation under a municipal contract. After the specific payment was made, it was deposited in the corporation's bank account. The defendant, however, disbursed all moneys in that account for general corporate purposes. In holding the corporate officer liable, the court stated (p 183): "The corporation received and deposited the assigned sum in a trust capacity, because the sum was equitably the property of the plaintiff, which the corporation, as the owner of the legal title, was authorized to receive and hold only for the purpose of delivery to the plaintiff. * * * The corporation could not lawfully appropriate it to another purpose." The security agreement here, and the trust relationship in *Hinkle,* imposed upon the debtor the obligation to hold specific moneys for the creditor and barred the debtor from disbursing those moneys for general corporate purposes. In this context, where a diversion of the proceeds occurs, the debtor *and the individual corporate officers who participated in the misconduct* are personally liable (see *Hinkle Iron Co. v Kohn, supra;* 4 Anderson, Uniform Commercial Code [2d ed], § 9-306:4). There was ample proof in the pleadings that the defendants George and Alan Swartz were corporate officers and knowingly participated in the prohibited conduct. On the other hand, the pleadings are insufficient to establish that either Mildred or Marion Swartz was an officer of Algo or participated in the conversion of the proceeds. While there is a bare allegation that Mildred Swartz is a corporate officer, this assertion is not supported by any evidentiary facts.

Accordingly, we find that the plaintiff's complaint and affidavits establish a prima facie cause of action against Algo and George and Alan Swartz. Moreover, these defendants, on their motion to vacate, have not established that the plaintiff must ultimately fail (see *American Reserve Ins. Co. v China Ins. Co.,* 297 NY 322, *supra).*

The more serious issue raised is whether the failure to afford the defendants notice and an opportunity for a hearing prior to the seizure of their property denied them due process of law. Until recently the leading case in the area was *Fuentes v Shevin* (407 US 67). In *Fuentes,* the court held unconstitutional, as violative of due process, two State statutes which allowed a secured installment seller to repossess goods in the debtor's possession without notice or a prior opportunity to be heard and without judicial order or supervision, but solely upon a writ issued by a court clerk and

executed by a local sheriff. Based upon *Fuentes,* a number of commentators have questioned the constitutionality of ex parte attachments sought under the various provisions of CPLR 6201 (see 1972 Supplementary Practice Commentary on CPLR 6211 in McKinney's Cons Laws of NY, Book 7B, Pocket Part; 47 St. John's L Rev 748). Indeed, one court has held an ex parte order of attachment unconstitutional where the ground upon which it had been granted was subdivision 8 of CPLR 6201, the subdivision involved in this case (see *Richman v Richman,* 72 Misc 2d 803, affd [without reaching the constitutional question] 41 AD2d 993).

However, the Supreme Court has apparently retreated from its broad holding in *Fuentes* in its recent pronouncement in *Mitchell v Grant Co.* (416 US 600).[4] In *Mitchell* the court upheld a Louisiana statute which permitted an ex parte seizure of a debtor's property. The salient provisions of that statute were as follows: Firstly, it required the creditor to obtain a court order of sequestration; secondly, the creditor was required to post a bond to protect the debtor's interest in the property; thirdly, an affidavit or verified petition showing "the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ" was required *(supra,* p 605); fourthly, the debtor could regain possession of the property by filing his own bond; and finally, "the statute entitles the debtor immediately to seek dissolution of the writ, which must be ordered unless the creditor 'proves the grounds upon which the writ was issued,' * * * the existence of the debt, lien, and delinquency, failing which the court may order return of the property and assess damages" *(supra,* p 606). In upholding this statutory scheme the court expressed the view that the procedure "effects a constitutional accommodation of the conflicting interests of the parties" *(supra,* p 607).

New York's statutory provisions regarding attachment (see CPLR 6201 *et seq.)* are closely analogous to the Louisiana statute which passed constitutional muster in *Mitchell.* Our statute also mandates judicial scrutiny over the attachment application and requires a creditor to show by affidavit "that there is a cause of action and the one or more grounds for

---

4. Although the full impact of *Mitchell* is still unclear, Mr. Justices POWELL and STEWART acknowledged that *Fuentes* has, in effect, been overruled (416 US, at pp 623, 634–635).

attachment provided in section ·6203[5] that exist and the amount demanded" (see CPLR 6212, subd [a]). CPLR 6212 (subd [b]) also requires the creditor to post a bond in an amount fixed by the court to protect the debtor from damages which may be sustained by reason of the attachment, including legal fees. Moreover, CPLR 6222 permits the debtor to regain possession of the property and to discharge the attachment by posting a bond and by guaranteeing that he will pay the amount of the judgment which may be recovered against him. Finally, CPLR 6223 permits the debtor, or any person claiming an interest in the debt or property, to move for an order to vacate or modify the attachment.

Our statutory scheme was recently evaluated in light of *Mitchell* and found to be constitutionally defective. In *Sugar v Curtis Circulation Co.* (383 F Supp 643 [presently before the Supreme Court of the United States on appeal]) a three-Judge District Court concluded that the fatal flaw in CPLR article 62 was its failure to provide for an immediate postseizure hearing at which the creditor has the burden of proving the grounds "upon which the writ issued" *(supra,* p 648). In reaching that conclusion, the court stated that "the sole basis for vacating the attachment under the CPLR [6223] is *not* that the grounds upon which it has been issued are unproven, but rather that the attachment 'is unnecessary to the security of the plaintiff'; and the burden of proof is not, as in *Mitchell,* on the plaintiff, but on the defendant" *(supra,* p 648 [emphasis in original]).

We are not in accord with the decision reached in *Sugar.* As one distinguished commentator has noted, the holding in *Sugar* "misconstrues CPLR 6223 since a motion to vacate on the ground that the attachment is unnecessary for security is just *one* ground for vacating the attachment" (New York Trial Practice by Joseph McLaughlin, NYLJ, Nov. 8, 1974, p 4, cols 1–2). Thus, for example, an order of attachment will be vacated if the defendant has no interest in the property[6] or if the creditor obtained the order by fraudulent means.[7] Of greater significance is the fact that under subdivision (a) of CPLR 6212 a creditor must show, by affidavit and other written evidence, the existence of a cause of action as well as

---

5. See n 3, *supra.*

6. See *Cawley v Clarke* (278 App Div 828).

7. See 7A Weinstein-Korn-Miller, NY Civ Prac, par 6223.13.

the ground specified in CPLR 6201[8] authorizing the attachment. As noted, if the attachment papers fail to establish a prima facie cause of action, or if they clearly establish that the creditor will ultimately be defeated, the order of attachment must be vacated.[9]

In our view New York's statutory scheme "effects a constitutional accommodation of the conflicting interests of the parties" (see *Mitchell v Grant Co.,* 416 US 600, 607, *supra).* At the initial stage of the attachment procedure the burden is upon the creditor to establish, by competent pleadings and proof, the necessity and propriety for this drastic remedy. Although the order of attachment may be obtained ex parte, the debtor's interest in the property is scrupulously protected by the Judge before whom the application is made. In addition, the debtor is afforded two postseizure remedies. Under CPLR 6222 a debtor may regain possession of the property by posting his own security bond and by making himself amenable to any judgment recovered against him. Further, CPLR 6223, as construed by our courts, permits the debtor to immediately attack the validity of the attachment order on a *number* of grounds, including the insufficiency of the creditor's pleadings or cause of action. As we understand this section, broad discretion is given to a Judge to vacate an attachment order "when evidence, though not lacking altogether, may seem too weak or uncertain to justify the remedy" (see *Zenith Bathing Pavilion v Fair Oaks S. S. Corp.,* 240 NY 307, 313, *supra).* The mere fact that the burden of proof is placed upon the debtor to establish the order's invalidity is not a ground upon which the entire statutory scheme should fall. As the court noted in *Mitchell:* "The requirements of due process of law 'are not technical, nor is any particular form of procedure necessary'" *(supra,* p 610 [citing *Inland Empire Council v Millis,* 325 US 697, 710]). Moreover, it is for the Legislature to decide what causes of action will justify the remedy of attachment (see *Rothschild v Knight,* 184 US 334, 341).

Accordingly, we hold that an ex parte order of attachment based upon subdivision 8 of CPLR 6201 is constitutional. However, as the plaintiff's pleadings were insufficient as to Mildred and Marion Swartz, the motion to vacate the order of

---

8. See n 3, *supra.*

9. See *American Reserve Ins. Co. v China Ins. Co.* (297 NY 322, *supra) Stines v Hertz Corp.* (22 AD2d 823, affd 16 NY2d 605, *supra)* and 7A Weinstein-Korn-Miller, NY Civ Prac, par 6223.11 and the cases cited therein.

attachment should have been granted as to them. As to the remaining defendants, the motion to vacate was properly denied.

BENJAMIN, J. (concurring). I fully agree with my brethren in the result reached in this case, even though my views are contrary to those of the court, as set forth in *Independence Discount Corp. v Bressner* (47 AD2d 756). Had I been in that case, I would have voted to the contrary.

GULOTTA, P. J., LATHAM and CHRIST, JJ., concur with MARTUSCELLO, J.; BENJAMIN, J., concurs, with a separate memorandum.

On this appeal from an order of the Supreme Court, Westchester County, dated March 15, 1974, this court rendered a decision and order, both dated May 7, 1975. Now, on this court's own motion said decision and order are recalled and vacated and the following decision is rendered.

Order of March 15, 1974 modified so as to provide that the defendants' motion to vacate the order of attachment is granted as to defendants Mildred Swartz and Marion Swartz and, except as so granted, is otherwise denied. As so modified, order affirmed, without costs.