■ BOUCHER BROS. CORP. et al., Appellants, v COACHMAN RESTAURANT CORP. et al., Respondents.—Order, Supreme Court, New York County, entered on October 9, 1975, affirmed, without costs and without disbursements, for the reasons stated by Gellinoff, J., at Special Term. Concur—Capozzoli, Lane and Lynch, JJ.; Murphy, J. P., and Birns, J., dissent in a memorandum by Murphy, J. P., as follows: Murphy, J. P. (dissenting). Pursuant to a written lease (hereafter the major lease), dated June 25, 1971, the corporate defendant (which is allegedly dominated and controlled by the named individual defendants) hired from Torpwood Corporation (Torpwood) certain designated space in a Manhattan office building for use as a restaurant, for a term of 21 years. The major lease anticipated a conditional assignment thereof as collateral in connection with a secured transaction and provided, *inter alia,* "that said conditional assignment shall not be effective or become operative, unless the assignee in such conditional assignment enters into possession of the premises and/or elects to exercise the assignee's rights or privileges in connection with this lease." Subsequently, and by agreement dated December 20, 1971, said corporate defendant (Coachman) entered into a security agreement (conditional sales contract) with plaintiff Boucher Bros. Corp. (Boucher) covering the former's purchase from the latter of designated chattels, fixtures and restaurant equipment. The total purchase price was $183,000, payable $60,000 in one lump sum and the balance of $123,000 in monthly installments over a period of years. To secure payment of the unpaid balance of the purchase price Coachman, *inter alia,* assigned its major lease to Boucher's designee, plaintiff W. & J. Equities Corp. (Equities) and received a sublease from Equities in exchange, terminable on payment of the full purchase price. The landlord under the major lease was allegedly notified of the assignment. Under the provisions

of the executed security agreement, Coachman agreed not to modify, change or extend its major lease without Boucher's consent; and that it would "not sell, assign or transfer its interest in * * * its [major] lease, unless it shall have first paid to [Boucher] the cash required to be paid". Subsequently, but apparently prior to any default in the payment schedule, Torpwood and Coachman, without prior consultation with plaintiffs, renegotiated the major lease on April 13, 1973, in expectation of a condemnation. The written modification of the major lease, among other provisions, effectively reduced the term of the lease to five years. As consideration for agreeing to such modification, Coachman received $175,000. In March, 1975, at which time it still owed Boucher in excess of $41,000, Coachman ceased its operations and abandoned the premises and its fixtures. The complaint, which seeks recovery of the $41,100 unpaid balance due under the security agreement, includes among its asserted causes of action a claim that defendants fraudulently diverted Coachman's assets and converted the lease previously assigned as collateral. Contemporaneously with the commencement of the action, appellants moved for an order of attachment (CPLR 6201, subd 8). Such relief was denied by Special Term for lack of a sufficient demonstration "that defendants were guilty of fraud or conversion" and of "the need for security." I cannot agree to sustain such determination, since I consider the denial of an order of attachment, under the circumstances of the case, to be a clear abuse of discretion. Respondents' reliance on the contingent and prospective nature of appellants' interest in the major lease is misplaced. Great stress is reposed on the fact that the major lease provides that a conditional assignment is not to become effective unless the assignee enters into possession or elects to exercise his rights. However, the major lease is between Torpwood and Coachman. Appellants are not parties thereto. And even if they had knowledge of such clause and took an assignment of the major lease subject thereto, respondents cannot deprive appellants of resort to the collateral by destroying it prior to the time the contingency occurs. If we carry this logic to its ultimate conclusion, any pledged assets permitted to be retained could be sold by the pledgor between installment payment dates and the proceeds pocketed with impunity irrespective of a later default. As between plaintiffs and respondents, plaintiffs had a superior right to the major lease. Defendants' modification thereof without the knowledge and consent of plaintiffs constituted a clear conversion and certainly impeded if it did not actually destroy Boucher's chances of recovering its full sales price. (Cf. *AMF Inc. v Algo Distr.,* 48 AD2d 352.) As for the security aspect of the application, defendant Peter Dactilos, in his opposing affidavit at Special Term, after first stating that he and his two brothers "are all business men with adequate financial means to pay the plaintiffs' judgment", admits that granting the motion "would be tantamount to depriving the defendants of an opportunity to vigorously defend this action, since they do not have sufficient funds to hire counsel to represent them in this action and also they would have insufficient monies to properly support themselves and their families." In sum, sufficient is shown in the record before us to establish a basis and need for an order of attachment. Accordingly, I would reverse the order on appeal and grant such relief.