Matthew M. Levy, J.
The plaintiff herein — A. C. Israel Commodity Co., Inc. — was (and is) a Delaware corporation doing an exporting business in this State. (It will hereinafter be referred to as Israel or as the attachment defendant.) Banco Do Brasil, S. A., the plaintiff in a prior action, and a defendant herein, procured an attachment against Israel’s property in this State and levied thereon. (This defendant will hereinafter be referred to as Banco or the attachment plaintiff.) The other defendant in the present action, National Surety Corporation — hereinafter referred to as the surety — bonded the attachment at the behest of Banco (Civ. Prac. Act, § 907; CPLR 6212, subd. [b]).
The undertakings executed by the surety, in consonance with the requirements of the statute, provided: “ that if the defendant [Israel] recover judgment in this action, or if the warrant of attachment is vacated, the plaintiff [Banco] will pay all costs which may be awarded to the said defendant, and all damages which the said defendant may sustain by reason of the said attachment ’ ’.
The attachment was in the sum of $600,471.40, and a levy in that amount was effectuated by the Sheriff, resulting in Israel’s funds in a local bank being immobilized to that extent for a *364 short period of time. The undertakings on the attachment aggregated $36,000.
Israel brought on a motion to have the attachment against it dissolved. The application resulted in an order which vacated the warrant of attachment against Israel, and set aside all levies thereunder on Israel’s property. The ground of the decision was that the complaint failed to state a cause of action cognizable in the courts of the State of New York. Thereafter, a series of appellate procedures were invoked by Banco to upset the vacatur.
Legal services were of course required by and rendered to Israel in connection with the motion to vacate the attachment and levy, and in defense of the various appellate proceedings instituted by Banco consequent thereto. The stages of the litigation may be subdivided as follows:
(1) the motion of the attachment defendant in this court to vacate the attachment, which motion was granted at Special Term (29 Misc 2d 229);
(2) the appeal taken in the prior action by the attachment plaintiff to the Appellate Division of this court from the order vacating the attachment;
(3) the motion by the attachment plaintiff in the Appellate Division for leave to appeal to the Court of Appeals of this State (13 A D 2d 912) from the order of affirmance of the Appellate Division (13 A D 2d 652);
(4) the appeal by the attachment plaintiff to the Court of Appeals, leave to appeal thereto having been granted by the Appellate Division (13 A D 2d 912);
(5) the petition by the attachment plaintiff to the Supreme Court of the United States for a writ of certiorari (376 U. S. 906), the Court of Appeals having affirmed the order vacating the attachment (12 N Y 2d 371).
The record shows that, between the times indicated in the events numbered 1 and 2 above, Israel was personally served with process and appeared generally and moved for an order dismissing Banco’s complaint on the merits. That motion was granted at Special Term, and, although a notice of appeal was filed by Banco, no further appellate proceedings were prosecuted. Israel does not claim the right to recover for the professional legal services required to be performed on its behalf in this aspect of the case. But Israel does seek judgment for the expenses for counsel fees and disbursements incurred by it assertedly for services rendered in obtaining and sustaining the vacatur of the attachment. "Whether these disbursements were such damages as are recoverable by the plaintiff *365 in the circumstances of the case is an issue which does not appear to have heretofore been determined in this State by precedential authority squarely in point.
Expenses incurred for the services of legal counsel are not, generally, an appropriate element of damages (Matter of Muck, 125 N. Y. S. 2d 415, 419; Soffer v. Glickman, 27 Misc 2d 721, 724-725). However, the rule is otherwise where the suit to recover such expenses is predicated on a wrongful attachment — because a warrant of attachment is “an extraordinary process, often [causing] great damages, and is designed, ordinarily, for the purpose of being used sparingly only.” (Allith-Prouty Co. v. Wallace, 32 Wyo. 392, 403). As stated by the Court of Appeals in Tyng v. American Sur. Co. (174 N. Y. 166, 168): “ That counsel fees are within the language of such an undertaking does not admit of doubt ”.
Such fees, to be recoverable, must of course be the natural and proximate consequense of the wrongful attachment (Hartford Acc. & Ind. Co. v. Chaney, 191 Okla. 523). Many of the jurisdictions which have held that counsel fees incurred in a direct attack on a wrongful attachment are a proper element of damage have also held that such fees incurred in defending the principal action on the merits are not recoverable. On the other hand, many authorities have allowed an exception in cases where the attachment could be vacated only by defeating the principal action on the merits (See Ann. 65 ALR 2d 1436-1438, § 7; 6 Am. Jur. 2d 1007-1010, §§ 630, 631.) So, “ there’s the rub" [1] in the case at bar: Were the attorney’s services here proximately caused by the attachment, proved to have been wrongful by an attack on the merits of the suit; or were they the result of defending the action on the merits?
The case was submitted to me for determination substantially on the basis of the receipt in evidence of the litigation papers and briefs in the prior suit. It is not gainsaid by the plaintiff here that the attachment was vacated “ on the merits ”. The process was otherwise valid on its face. The action being for a money judgment and Israel being a foreign corporation, it was per se subject to attachment (Civ. Prac. Act, § 903, subd. 1; CPLR 6201, subd. 1). Nor is it denied that Israel was engaged in doing business in this State at the time of the attachment and levy and was thus subject to service of process upon it personally (Civ. Prac. Act, § 229; CPLR 311, subd. 1).
*366 The defendants contend that, as a matter of law, the plaintiff is not entitled to recover for any expenses incurred by it in the prior action — and in any event and at the most, for the services as to item No. 1 only (having to do with the application by Israel at Special Term to vacate the attachment). The principal thesis of the defendants seems to be based on the assumption that an attachment defendant who is subject to personal service within the State cannot recover counsel fees incurred in attacking a wrongful attachment on the merits; and it is further urged by the defendants that the appellate proceedings involved solely issues as to the merits of the attachment plaintiff’s substantive claim and the expense thereof was therefore not within the ambit of damages recoverable upon the vacatur of the attachment.
A leading case in this State is Thropp v. Erb (255 N. Y. 75). A nonresident defendant was involved who was not personally served within the State. He made no motion to vacate the warrant. After the attachment, he personally appeared in the action and successfully contested the suit by way of trial on the merits. In determining the issue of proximate cause the court reasoned (1) that a prior motion would have been ‘ ‘ futile ’ ’, since the defendant was a nonresident and since the attachment was valid on its face, and, therefore, the failure to make such a motion Avas not a break in the ‘ ‘ chain of causation ” (p. 79); and (2) that the “ lex^y in the attachment action was the cause which induced the defendant in that action to appear and defend on the merits, though no summons was served upon him.” (p. 81.) Thus, as I read the Thropp decision, íavo criteria evolve for determining liability: causation and inducement. Language in the opinion is available for citation by both parties here; but it is important to note that the court was quite explicit in pointing out that “In each case the question of whether the defense on the merits was the result of the warrant of attachment must depend upon the circumstances of that case.” (p. 80).
The causation factor was cited as a basis for distinguishing prior cases in Reachi v. National Auto, & Cas. Ins. Co. of Los Angeles (37 Cal. 2d 808). The essential facts in Reachi were identical to those in Thropp. The court in the Reachi case stated (p. 811): “ Although there are several decisions by the courts of this state denying the recovery of counsel fees paid in defense of the principal suit * * * material factual differences distinguish them from the situation shown by Reachi’s complaint. In none of these cases did the plaintiff allege or prove that the writ of attachment was regular on its *367 face and, for that reason, not subject to a motion to vacate or dissolve it.”
In Elsman v. Glens Falls Ind. Co. (146 Misc. 631, 637-638) the court said: “The validity of the plaintiff’s claim for attorneys’ fees and other expenses for defending the entire case, as distinguished from such expenditures as were occasioned by merely vacating or dissolving the attachment, depends upon whether it was necessary to try the merits in order to effect a disposition of the levy. Causality is the test. Did the attachment produce the expense! Was the loss ‘consequential’, or was it ‘ an actual and direct injury ’! * * * It is not pretended that the attachment was irregular or invalid or defective. Its regularity and validity and freedom from defect must be presumed.” (See, also, N. V. Transandine Handelmaatschappij v. Massachusetts Bonding & Ins., 181 Misc. 202.)
Parish v. Van Arsdale-Osborne Brokerage Co. (92 Kan. 286) also highlighted the causation aspect. In this case the attachment defendant was a resident and sought to recover attorney’s fees for defending the action. The court stated (p. 290): “ There might have been a preliminary motion to dissolve the attachment on the ground that the averments of the affidavit were not true and that there was no indebtedness, but the same proof would have been necessary on that motion as on the final trial that was had.” The court concluded that the trial was necessary to dissolve the illegal attachment and as the counsel fees were incurred for this purpose they were recoverable.
A case which involved the inducement element was Brandenstein & Co. v. Casiano (283 F. 843) which arose in the United States District Court for the Southern District of New York. The attachment defendant, a nonresident, who was not served personally within the State, sought to recover attorney’s fees incurred for a defense on the merits where no prior motion to vacate the attachment was made. It was conceded that the attachment was valid on its face. Judge Learned Hand, in that case, said (p. 845): “ The right to attach the goods of a nonresident merely as such is drastic, and there is no good reason why, if it proves to have been improperly exercised, the defendant should be left without redress, when he cannot regain possession of his goods, except by meeting the issues on the merits.” And, in a later case, Judge Hand, this time speaking for the United States .Court of Appeals for the Second Circuit, in commenting on the Thropp holding, stated: “ That decision * * * settled it that counsel fees for defending the action upon the merits are allowable against the bond, if there is no *368 other way to vacate the attachment.” (Warner Co. v. Andrews, 73 F. 2d 287, 291.)
The inducement feature was also critical in Hendricks v. Campbell (7 A D 2d 949). The attachment defendant appealed from an order denying his motion for an increase in security. Plaintiff had obtained the warrant of attachment on the ground that defendant was a resident of the State who was about to depart therefrom with the intent of defrauding his creditors and of avoiding the service of a summons. Defendant contended that he was entitled to an increase in the security because of counsel fees he will incur at the trial. The court held (pp. 950-951): “ Here the defendant has unsuccessfully moved to vacate the attachment and there is no question that the only way in which he can rid himself of the attachment is by a trial. The defendant was served outside the State and although the attachment was unnecessary to obtain jurisdiction over him it is nevertheless obvious that it was the attachment which induced his appearance in the action * * defendant’s defense on the merits will be the result of the attachment and therefore an increase in the security * * should be granted to cover his counsel fees for both the motion to vacate and the trial.”
The reported decision in Dinnerstein v. Max’s Gas Station, (172 Misc. 27) cited by the defendants, does not indicate whether the court adequately considered the inducement feature before deciding that the attachment defendant could not recover counsel fees for defending the main action. It is relevant to note, however, that the court pointed out at (pp. 27-28) that “ the attachment was issued after the service of the summons upon the defendant in that [the attachment] action. The action having been instituted by personal service subjected the then defendant to the expense of engaging counsel in the preparation and conduct of his defense upon the issues raised by the pleadings. Except for the bringing of the motion to obtain a vacatur of the attachment, the defendant’s legal expenses were not increased or affected by the levy of the attachment for the reason that the then defendant was subjected to possible liability on the issues involved in the action and not by the warrant of attachment. In other words, the fees of counsel incurred in the defense in the principal suit were not the natural and direct consequence of the levy of the attachment.”
The inducement criterion similarly seems to have been predominant in the decision of the court in Randall v. United States Fid. & Guar. Co. (53 Idaho 310), which also was adverse to the plaintiff’s claim. In that case the attachment defendant *369 was personally served Avithin the State and his dilemma was either to appear and defend or to suffer a default judgment. The court said at page 313: ‘ Recognizing this necessity, he employed counsel to protect his interests * * * before the writ of attachment was issued. There is no shoAving that the expense of employing counsel Avas incurred because of the attachment, nor that it would not have been incurred had no attachment been levied ”. In the circumstances disclosed by the record in that case, the court refused to allow the attachment defendant attorney’s fees for defending the action successfully on the merits.
The rationale is very much the same as that employed by the vast majority of courts in allowing recovery of counsel fees incurred in dissolution of temporary injunctions. “ The reasoning * * * is that a temporary injunction is an extraordinary remedy, that it deprives the defendant of a right claimed by him * * * and puts him under a restraint, to remove Avhich he must procure the services of counsel” (Ann. 164 A. L. R. 1089). And I am of the view that analogies to actions on injunction bonds are quite in point. (Thropp v. Erb, 255 N. Y. 75, 80, supra; Olsen v. United States Fid. & Guar. Co., 230 N. Y. 31.) The rule in such case was stated quite succinctly in Eisen v. Post (15 Misc 2d 59, 62-63): “ Basically, to determine whether the expense of a trial is the necessary and proximate result of an injunction pendente lite, one should regard the problem it presents to the particular defendant.” The court cited Granulator Soap Co. v. Haddow (159 App. Div. 563, 564-565), where it was stated: “ The question is whether the defendant was constrained to try the present case to vacate the injunction or for the sake of a favorable determination of the issues themselves. To determine that, the defendant’s predicament in the matter must be considered ”.
The defendants contend that since, in the case at bar, the attached property was not at stake in the prior litigation, the appeals to which they subjected the attachment defendant did not arise “ by reason of the attachment.” I do not agree. As a foreign corporation, Israel was subject to an attachment of its property and funds in this State during the pendency of the action (Civ. Prac. Act, §§ 902, 903). It could not have successfully set the attachment aside on the ground that it Avas not required for jurisdictional purposes — it is not “ immune from attachment for the reason that it has been duly authorized to transact business here.” (Prentiss v. Greene, 193 App. Div. 672, 678.) Nor, under the statute as it existed at the time of the prior litigation here involved, could the attachment have *370 been vacated on the ground that the security thereby afforded was unnecessary. (Zeiberg v. Robosonics, Inc., 43 Misc 2d 134).[2] If Israel were, with legal basis, to contest the attachment, it was necessary for it to attack or defend on the merits of the .suit. This is an instance where it may truly be said that the specific part has necessarily encompassed the general whole.
The argument, made by the present defendants, that the basis of jurisdiction over Israel was completely unrelated to the attachment and would have been exactly the same if there had never been any attachment, is, as I see it here, a distinction without a difference. And, moreover, a further difficulty is that that might have been so, had Banco proceeded in that way; but the fact is that, of its own volition, it did not. Looking at the issue from this angle, let me suggest that Newton’s Third Law of Motion — ■“ To every action there is always opposed an equal reaction”[3] — has, not at all surprisingly, long since become the first law of litigation.
The inducement to Israel — as a foreign corporation — to resist the process of attachment, and the cause for such resistance, may, in some substantial degree, be reasonably measured by the vigor with which Banco sought to sustain the attachment. Appeals to the Appellate Division, to the Court of Appeals, to the United State .Supreme Court were, in one fashion or another, prosecuted by Banco from the order vacating the attachment. Banco was not satisfied to let the matter rest when first the warrant and levy were vacated. There must have been some substantial benefit to Banco, perceived by it in the levy, which caused it to litigate so aggressively — first, in procuring the attachment at the outset — notwithstanding that Israel was available for normal service of process; and, second, in prosecuting so repeatedly and prodigiously the efforts to have the warrant reinstated. If the issue were only the merits of the case in chief — and not the tactical advantage of a legal embargo on Israel’s funds here (as an in terrorem adversary policy or as a sincere effort to obtain adequate security in the event of a favorable final judgment on the merits, or both) — Banco need not have procured the warrant or *371 executed the levy or resisted the motion to vacate or appealed and appealed from the vacatur. It could instead have easily effectuated valid personal service of the summons (without utilization of the drastic process of attachment) and contested — as it did — the motion to dismiss the complaint, and then proceeded with its appeal from the adverse decision — which it did not.
In view of what Banco did and was seeking to do in the litigation, should Israel have permitted Banco’s appeals to one court or another — in Banco’s efforts to reinstate the attachment — to have proceeded to reversal as by Israel’s default? Should Israel, in effect, have consented to the restoration of the levy, and pleaded with Banco to prosecute its appeal from the order dismissing the complaint? The questions answer themselves. In my view, it cannot be truly said that Israel’s opposition to the series of appeals taken by Banco was not induced by the wrongful attachment. The contrary appears to me to be the fact. Although it had been vacated, the very real threat of its reinstatement hung heavily. Were Banco to have been successful, Israel would have been put in the very uncomfortable and uncommercial position of having over a half million dollars of its assets again removed from its control and, this time, for what promised to be an extended period. As a dealer in commodities, working capital was Israel’s lifeblood, and $600,000 is certainly a critical amount of working capital. The recovery of interest, without more, is an inadequate remedy for a wrongful attachment — initially procured without right and continually hanging as a Sword of Damocles, ready to be unsheathed by possible appellate reversal, and to strike at Israel’s property and resulting business credit.
The circumstances involved in the present case strongly indicate that Israel’s defense “ on the merits ” — in the attachment proceedings and appeals — was induced by the warrant of attachment and the levy thereunder, and the not unreasonable apprehension that reversal of the vacatur would be a financial burden that it should not be compelled to suffer. As Banco’s warrant was valid — other than for its failure to state a cause of action — the wrongful attachment was thus the proximate cause of Israel’s participation on the merits.
I hold that, in the light of the chronology of the initial steps of the litigation, of the procedures undertaken by the parties, and of the essence of the attack upon the process — first, a successful motion by Israel to vacate the attachment on the merits, and later an application by Israel, equally successful, *372 to dismiss the complaint on the merits — there were both causation and inducement in the need for legal services in behalf of Israel’s efforts to vacate the attachment and to maintain the vacatur, albeit the services also involved professional consideration of the substantive validity of Banco’s suit.
The guideline sought to be established by the defendants for the allowance or disallowance of counsel fees to an attachment defendant for a defense on the merits — that determination thereof should be predicated upon the defendant’s residence or nonresidence — is not persuasive. The defendants, in effect, urge a holding that a nonresident defendant not subject to personal service within the State should be allowed counsel fees for defending on the merits whether or not he was induced to do so by reason of the attachment; and that a nonresident (or resident) defendant subject to personal service within the State should not be allowed counsel fees for defending on the merits even though he may have been induced to do so by reason of the attachment. The court in St. Joseph Stoclc Yards Co. v. Love (57 Utah 450) in considering this contention, concluded that “No good reason is advanced, and in our judgment none can be, why such a difference should exist ” (p. 460) and “ To so hold would be to make a distinction where there is no difference. Moreover, it would result in giving a foreign corporation a peculiar advantage over a domestic corporation and over every citizen of the state ” (p. 464). (For other cases wherein attorney’s fees were allowed to a resident attachment defendant for a defense of the main action, see Ann. 25 A. L. R. 592.)
Although the right to recover counsel fees for an appeal as damages on an attachment bond has rarely been given explicit expression, most courts which allow reasonable attorney’s fees as an element of damage when incurred in relation to the attachment would seem to have “no good reason” not to include those expended in defending an appeal, “ and the authorities are to this effect.” (Ann. 25 A. L. R. 579, 586; see, also, 6 Am. Jur. 2d 1007-1009, § 630, and cases cited therein.)
The case of Subin v. United States Fid. & Guar. Co. (21 Misc 2d 1082, affd. 12 A D 2d 49) is helpful. There, an action was commenced by Penn-Texas Corp. against the attachment defendant, a nonresident. A surety executed undertakings to support warrants of attachment issued against his property. Levies under the warrants were made. “ Thereafter, on motions made by the [attachment] defendant * * * the warrants * * * were vacated and the levies * # # set aside on the ground that the papers upon which the warrants were issued did not contain sufficient evidentiary facts to show a cause of action ’ ’ *373 (12 A D 2d 49, 50). Penn-Texas appealed from the order of Special Term and the Appellate Division unanimously affirmed. The attachment defendant brought suit to recover attorney’s fees for services rendered in vacating the warrant. The court, in awarding the fees, said that the attorneys “ worked day and night in midsummer of 1958 and achieved the successful results of vacating the attachments and unanimously affirming their success below in the appeal before the Appellate Division of this court. This action is the aftermath of that success and in the opinion of this court well warrants the full recovery sought against the defendant’s [surety’s] undertakings.” (21 Misc 2d 1082,1084.) Thus it appears that attorney’s fees were awarded both for the initial vacatur, which was successful, and for opposing the appeal.
Tyng v. American Sur. Co. (69 App. Div. 137, affd. 174 N. Y. 166, supra) may be considered in this connection. There, an action was brought by Kelly against Baker, a nonresident who Avas served personally within the State. An attachment was obtained upon the ground of Baker’s nonresidence and a levy was made thereunder upon funds in banks. Thereupon, a motion was brought by Baker to vacate the attachment on the ground that these funds Avere held by Baker as trustee. This motion Avas granted, but upon appeal the order was reversed. A trial on the issues Avas then had, whereupon the complaint Avas dismissed on the merits. Plaintiff, as assignee of Baker, sued to recover from defendant surety on the undertaking for counsel fees for defending the action and for the proceedings to vacate the attachment. The Court of Appeals said (pp. 168-169): “ Although the motion to vacate the attachment, at first successful, eventually, had failed at the Appellate Division, the defendant in that action was justified in going to the expense of employing counsel to vacate it * * * and the justification * * * Avas shown by the result of the trial * * *. [I]f the defendant * * * was in her right in employing counsel to set aside the attachment * * * it, logically, followed that she was damaged by reason of the attachment to the extent of reasonable counsel fees she was compelled to pay.”
As the sum claimed for attorney’s fees on the attachment proceedings in the Tyng case had exhausted the bond, the court found it unnecessary to consider whether attorney’s fees for defense at the trial would also be recoverable. However, it does appear that the attachment proceedings include the motion to vacate and the opposition to the appeal taken from the order of vacatur, and that the sum claimed and awarded includes fees for services rendered for both.
*374 In Dothard v. Sheid (69 Ala. 135, 138), it was held that: ‘ ‘ reasonable and necessary counsel fees incurred in defending the attachment suit are recoverable as a part of the lawful damages, [a]nd * * * such damages also include counsel fees incurred in prosecuting or defending an appeal to the Supreme Court.”
The defendant in the attachment proceedings in State ex rel. Shipman v. Allen (144 Mo. App. 234) obtained a judgment in his favor on a plea of abatement, after which plaintiffs secured an order granting an appeal but failed to prosecute the appeal. Thereupon, defendant ‘ ‘ presented a copy of the judgment and secured its affirmance in the appellate court. This service was rendered necessary on account of the appellants’ own action, and they certainly cannot be heard to say that they are not liable for damages caused by their own act” (p. 241). The court held that the attachment defendant could recover counsel fees incurred for services rendered in the appellate court. (See, also, Connelly v. White, 122 Iowa 391.)
In Ideal Heating Corp. v. Royal Ind. Co. (107 Cal. App. 2d 662) plaintiff sought to recover counsel fees for services rendered in connection with filing and arguing a motion to discharge an attachment levied on its property. The motion was denied, but, on appeal taken from the order, the result was a reversal thereof and the dissolution of the attachment as wrongful. The court, in allowing counsel fees, stated (p. 665) that:
“It is obvious that in preparing the first motion which was denied counsel made research and other preparation which were beneficial in connection with the preparation and presentation of the second motion which ultimately resulted in the dissolution of the attachment. The same reasoning applies to the preparation and presentation of the writ of mandate to the District Court of Appeal which was denied, because such research and preparation were beneficial in the presentation of the appeal which in turn resulted in the dissolution of the attachment.
“The fact that in deciding [the appeal] the court passed upon other questions which were of benefit in defense of the principal action did not make the evidence of the work and preparation of counsel in connection with that appeal inadmissible, it being a question of fact for the determination of the trier of fact * * * as to the value of the services rendered by counsel in obtaining the dissolution of the attachment.” (See, also, Albertsworth v. Glens Falls Ind. Co., 84 Cal. App. 2d 816.)
*375 In Warner Co. v. Andrews (73 F. 2d 287, 291, supra) Judge Learned Hand commented: “Possibly it may be a corollary [from the holding in Thropp v. Erb, 255 N. Y. 75, 80, supra] that if the complaint is demurrable on its face, the defendant may recover only the cost of the demurrer ”. To which I add that, if it be necessary to engage in appellate litigation to sustain the demurrer, the expense thus incurred is recoverable as well.
Arguing that the merit or lack of it in Banco’s cause of action was a most difficult issue to resolve, the defendants urge this upon me as a factor to take into account in determining whether Israel is entitled to recover for attorney’s fees expended in opposing Banco’s efforts throughout the entire judicial hierarchy in seeking to justify the attachment after it had been vacated. The response is plain. The character of the legal issues involved is a matter properly to be taken into account in determining the value of the legal services rendered. But simplicity versus complexity cannot be the criterion of liability.

. Shakespeare, Hamlet, Act III, sc. 1.

. CPLR 6223, now in effect, includes a new sentence reading as follows: “ If, after the defendant has appeared in the action, the court determines that the attachment is unnecessary to the security of the plaintiff, it shall vacate the order of attachment.”

. Sir Isaac Newton’s Mathematical Principles of Natural Philosophy and His System of the World (Motte-Cajori trans., Univ. of Calif. Press 1946), p. 13.