**CORRESPONDENT SERVICES CORPORATION, Interpleader Plaintiff,**

v.

**J.V.W. INVESTMENT LTD., First Equities Corporation of Florida, J.V. Waggoner And Donal Kelleher, Interpleader Defendants,**

**and**

**Suisse Security Bank and Trust, Ltd., Additional Defendant on Cross–Claims.**

**No.  99 Civ.  8934(RWS).**

United States District Court, S.D. New York.

Nov.  7, 2007.

Milbank, Tweed, Hadley & McCloy LLP, by: Andrew E. Tomback, Esq., Charles Westland, Esq., New York, NY, Skoloff & Wolfe, P.C., Livingston, NJ, for Additional Defendant on Cross–Claims.

Leboeuf, Lamb, Greene & MacRae LLP, by: Thomas G. Rohback, Esq., Gail L. Gottehrer, Esq., New York, NY, for Interpleader Defendants.

*OPINION*

SWEET, District Judge.

Raymond Winder, Liquidator (the "Liquidator") of Suisse Security Bank & Trust, Ltd. ("SSBT"), has moved for the assessment of damages pursuant to New York C.P.L.R. 6212(e), for "all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment ... if it is finally decided that the plaintiff was not entitled to an attachment ..." against J.V.W. Investment Ltd. and J.V. Waggoner (collectively, "Waggoner"). For the reasons set forth below, the motion is granted.

**Prior Proceedings**

This action was commenced in 1999 by plaintiff Correspondent Services Corporation ("CSC"), a subsidiary of Paine Webber, to resolve competing claims to a certificate of deposit (the "CD") in its possession. These claims had been asserted by Donal Kelleher ("Kelleher") and Waggoner.

On September 28, 2000, Waggoner filed a cross-claim against SSBT and on that same date obtained a Temporary Restraining Order ("TRO") against SSBT with respect to $3,000,000 of SSBT's assets then held by RBC Dain Rauscher (formerly Tucker Anthony). An Order of Attachment attaching $3,000,000 of SSBT's assets was entered on November 17, 2000 (the "Attachment").

Discovery established that the CD had become valueless over two months prior to the date CSC filed this action. On August 22, 2001, SSBT moved to dismiss the interpleader complaint for lack of subject matter jurisdiction.

Waggoner brought a new action against SSBT in state court (the "State Court Action") and obtained an attachment of the property previously attached by the District Court (the "State Attachment").

On May 28, 2002, CSC's complaint was dismissed for lack of subject matter jurisdiction, Waggoner's cross-claims against SSBT were dismissed, the Attachment was vacated, and SSBT was held to be entitled to attorneys' fees and costs against the Waggoner Parties pursuant to C.P.L.R. 6212(e) (the "May 2002 Opinion"). The May 2002 Opinion held that the purpose of C.P.L.R. 6212(e) is "to make the attaching plaintiff strictly liable for all damages occasioned by the wrongful attachment." *Correspondent Servs. Corp. v. J.V.W. Invs., Ltd.,* 205 F.Supp.2d 191, 204 (S.D.N.Y.2002) (quoting *Roth v. Pritikin,* 787 F.2d 54, 59 (2d Cir.1986)), and that "SSBT is entitled to an award of attorney's fees that it has incurred since the entry of the [Waggoner] order of attachment on November 17, 2000." *Id.* at 205.

The May 2002 Opinion also concluded that:

> As the time this action was filed and at the time JVW and Waggoner asserted claims against SSBT, the Court lacked subject matter jurisdiction. Waggoner was in possession of a new CD that represented and was purchased with the same funds that had once backed the expired CD that was alleged to be the original basis of jurisdiction. In addition, Waggoner personally liquidated JVW's bank account prior to the commencement of this action.

*Id.*

In response to a motion for reconsideration filed by Waggoner challenging the award of damages pursuant to C.P.L.R. 6212(e), SSBT's entitlement to damages was reaffirmed on January 31, 2003. *See Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.,* No. 99 Civ. 8934, 2003 WL 221746, at *2–3 (S.D.N.Y. Jan. 31, 2003) (granting Waggoner's motion for reconsideration and holding that the Waggoner's State Attach-

ment did not disturb SSBT's entitlement to damages pursuant to C.P.L.R. 6212(e) upon dismissal of the action) (the "January 2003 Opinion").

On July 16, 2003, the Court of Appeals for the Second Circuit (the "Second Circuit") ruled on the appeal taken by Waggoner from the May 2002 Opinion. *See Correspondent Servs. Corp. v. First Equities Corp. of Florida,* 338 F.3d 119 (2d Cir.2003). The Second Circuit affirmed the District Court's finding that the CD in CSC's possession was worthless at the time CSC commenced this litigation and rejected Waggoner's contention that jurisdiction could be predicated upon either the federal interpleader statute or Rule 22 of the Federal Rules of Civil Procedure. Among other things, Waggoner had asked the Court to "deem" CSC's complaint irrelevant for jurisdictional purposes and to "deem" party-defendant J.V.W. (an alien) to be a nonparty "intervenor" to the litigation. The Court rejected this "novel" argument, emphasizing that Waggoner had "provide[d] . . . no caselaw to support their contention." *Id.* at 124–25.

Although upholding this Court's decision that CSC's interpleader claims failed to satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332, the Second Circuit noted that the May 2002 Opinion "did not explicitly determine" whether CSC's Declaratory Judgment Claim (the "DJ Claim") pursuant to 28 U.S.C. § 2201 "supports diversity jurisdiction." *Id.* at 125–26 and remanded for an explicit determination by this Court on that issue.

The opinion entered on September 29, 2004 (the "September 2004 Opinion") concluded that there was no basis for federal jurisdiction over CSC's Complaint. *See Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.,* No. 99 Civ. 8934, 2004 WL 2181087, *7 (S.D.N.Y. Sept. 29, 2004), that because the "object" of CSC's DJ Claim was the "valueless" CD, "[i]t necessarily follows that the amount in controversy requirement . . . has not been satisfied and this Court lacks subject matter jurisdiction." *Id.* at *12. Waggoner's request for leave to amend CSC's complaint was denied in the absence of any precedent allowing a defendant to amend a plaintiff's pleading. *Id.*

The September 2004 Opinion also reaffirmed and incorporated the prior holdings that SSBT is entitled to damages pursuant to C.P.L.R. 6212(e) based upon the Waggoner wrongful attachment of SSBT's assets. *Id.* at *13–18, noting that the "attachment of SSBT's assets—obtained under circumstances that suggest that Waggoner had reason to know that subject matter jurisdiction was lacking when it was, in fact, lacking—was wrongful, and as a result of the attachment SSBT has sustained a substantial financial burden. . . ." *Id.* at *16.

On March 10, 2006, the Second Circuit affirmed the Court's decision, holding that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Correspondent Servs. Corp. v. First Equities Corp. of Florida,* 442 F.3d 767, 769 (2d Cir.2006) (quoting *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). The Second Circuit further noted that "[b]ased on its review of the relevant allegations in the complaint, the District Court concluded that the object of the litigation in this case was the worthless CD and therefore determined that the jurisdictional amount had not been satisfied." *Id.* The Second Circuit cited with approval the following ruling of this Court:

"Because the CD has been identified by the plaintiff in this action as the object of the 'actual controversy,' its value pro-

vides the appropriate basis for the measure of the amount in controversy. It follows that, since the CD had no value when CSC brought suit, the amount in controversy ... falls short...."

*Id.* (citation and internal quotation marks omitted)

The Second Circuit found that this Court had appropriately rejected Waggoner's argument that the amount in controversy was some $10,000,000, concluding that "[w]e agree with and adopt the above reasoning of the district court, and therefore affirm its holding that diversity jurisdiction was lacking over CSCs declaratory judgment claim." *Id.* at 770.

Because the quantum of damages to which SSBT is entitled had not been determined, the Second Circuit did not address this Court's award of damages pursuant to C.P.L.R. 6212(e). Pursuant to a January 26, 2004 Stipulation and Order, the parties agreed to postpone the assessment of damages to which the Liquidator was entitled pursuant to C.P.L.R. 6212(e) until after a decision was rendered by the Second Circuit on Waggoner's second appeal from this Court's second dismissal of this action. As set forth in a March 9, 2005 Stipulation and Order of this Court:

> [T]he parties agree that, to the extent that the Waggoner Parties' appeal challenges the District Court's award of damages for wrongful attachment, such appeal is premature because the District Court has not yet fixed the amount of damages, and thus, this Court lacks appellate jurisdiction over that portion of the appeal. *See Westchester County Corr. Officers Benevolent Assoc. v. County of Westchester,* 205 F.3d 1327 (2d Cir.2000).

After the Second Circuit's March 10, 2006 Opinion, on March 31, 2006, the Liquidator made an application in the Second Circuit for pursuant to C.P.L.R. 6212(e)

for the damages incurred defending against Waggoner's repeated appeals to the Second Circuit. On May 4, 2006, the Second Circuit remanded the Liquidator's application for its appellate damages to this Court for a determination in the first instance. The instant motion of the Liquidator for the assessment of damages under C.P.L.R. 6212(e) also included those expenses incurred defending against both appeals taken by Waggoner to the Second Circuit. It was heard on April 25, 2007.

### Damages Pursuant to C.P.L.R. 6212(e) are Awarded

Article 62 of the C.P.L.R., the statutory basis for the Waggoner Attachment obtained on November 17, 2000, provides in pertinent part:

> The Plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment, or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property.

C.P.L.R. 6212(e).

As set forth above, this Court has ruled on three occasions that SSBT is entitled to damages incurred in the district court pursuant to C.P.L.R. 6212(e) upon the dismissal of this matter for lack of subject matter jurisdiction.

In the May 2002 Decision, the conclusion was based on the following principles of New York law:

> (i) The purpose of C.P.L.R. 6212(e) is "to make the attaching plaintiff strictly liable for all damages occasioned by the wrongful attachment." *Correspondent Servs. Corp.,* 205 F.Supp.2d at 204 (quoting *Roth v. Pritikin,* 787 F.2d 54, 59 (2d Cir.1986) (internal quotation omitted)).

(ii) "A defendant is not required to prevail on the merits in order for the court to award damages under section 6212(e)." *Id.* (quoting *Rashi Textiles, U.S.A., Inc. v. Rhomberg Textil Gesellschaft M.B.H.*, 857 F.Supp. 1051, 1054 (S.D.N.Y.1994)) (internal quotation marks omitted).

(iii) "[A] dismissal of the case or of the attachment on any basis, procedural or substantive, is sufficient to support an award of damages and attorney's fees." *Id.*

As set forth above, in its reconsideration motion, Waggoner argued that the issuance of the State Attachment somehow nullified SSBT's right to damages pursuant to C.P.L.R. 6212(e) in the dismissed federal action. *See Correspondent Servs. Corp.*, 2003 WL 221746, at *2–3.

The January 2003 Opinion concluded that the State Attachment was irrelevant to Waggoner's joint liability to SSBT pursuant to C.P.L.R. 6212(e) for the damages caused by the Attachment. *See id.* It further concluded that "SSBT will 'recover judgment' against the Waggoner Parties within the meaning of C.P.L.R. 6212(e) by reason of this Court's dismissal of the action" regardless of the State Attachment or the outcome of the state court proceedings. *Id.* The January 2003 Opinion followed the clear precedent of *Minskoff v. Fidelity & Cas. Co.*, 28 A.D.2d 85, 281 N.Y.S.2d 410 (N.Y.App.Div.1967), *aff'd*, 23 N.Y.2d 706, 296 N.Y.S.2d 151, 243 N.E.2d 755 (1968), in which the New York Appellate Division rejected the argument that there had been no "final decision" with respect to an attachment because it had been vacated in conjunction with a dismissal on the ground of forum non conveniens. 28 A.D.2d at 87, 281 N.Y.S.2d 410. The *Minskoff* court found this argument baseless and upheld an award of damages to the party whose assets had been wrongfully attached:

> It has been finally determined that the plaintiff ... had no right to bring the action in this forum. Having no such right, he had no right to obtain an attachment here and this is a final determination on the merits of the attachment. Whether or not [plaintiff] can maintain an action in some other forum has nothing to do with the question presented.

28 A.D.2d at 87, 281 N.Y.S.2d 410.

Moreover, the January 2003 Opinion rejected Waggoner's contention that only JVW—a Dominican shell corporation—was potentially liable for the damages caused by the Waggoner jointly obtained attachment. *See id.* ("Where two plaintiffs obtain an attachment, both are liable for the defendant's costs and attorneys' fees.").

Upon remand from the Second Circuit, the September 2004 Opinion again concluded that the "purpose of [C.P.L.R. 6212(e)] is to make the attaching plaintiff strictly liable for all damages occasioned by a wrongful attachment...." *Correspondent Servs. Corp.*, 2004 WL 2181087, at *13 (quoting *Roth v. Pritikin*, 787 F.2d at 59) (internal quotation marks omitted). The Opinion held that the Liquidator was entitled to damages pursuant to C.P.L.R. 6212(e), and reaffirmed and incorporated its prior decisions on the subject. *Id.* at *13–18. Additionally, the arguments advanced by Waggoner that the *Erie* doctrine and/or C.P.L.R. 326(b) (the latter being a state statute governing the removal of a matter from one state to another state court) negated SSBT's entitlement to damages upon the dismissal of this action for lack of subject matter jurisdiction were rejected. *Id.* at *17.

Courts in this circuit have long recognized that because of their "extraordinary" nature, attachments sought under

New York law must be strictly construed against the party seeking to utilize this particularly severe provisional remedy. *See Asdourian v. Konstantin*, 50 F.Supp.2d 152, 159 (S.D.N.Y.1999) ("Since attachment is an extraordinary remedy created by statute in derogation of the common law, the provision should be strictly construed in favor of those against whom it is employed.") (quoting *Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 332 (2d Cir.1983)); *Interpetrol Bermuda, Ltd. v. Trinidad & Tobago Oil Co.*, 135 Misc.2d 160, 513 N.Y.S.2d 598, 604 (N.Y.Sup.Ct. 1987) ("Our Courts have repeatedly emphasized that attachment is a harsh and extraordinary remedy which must be construed strictly in favor of those against whom it may be employed.") (quoting *Penoyar v. Kelsey*, 150 N.Y. 77, 78, 44 N.E. 788 (1896)) (internal quotation marks omitted).

■ In accordance with Rule 6212(e), a determination must be made whether the attorneys' fees incurred by the Liquidator defending against Waggoner's repeated appeals to this Court were the "natural and proximate consequence of the wrongful attachment." *A.C. Israel Commodity Co. v. Banco Do Brasil, S.A.*, 50 Misc.2d 362, 270 N.Y.S.2d 283, 286 (N.Y.Sup.Ct. 1966); *see also Thropp v. Erb*, 255 N.Y. 75, 79–80, 174 N.E. 67 (1930). As previously set forth, "[a] dismissal of the case or of the attachment on any basis, procedural or substantive, is sufficient to support an award of damages and attorney's fees." *Correspondent Servs. Corp.*, 205 F.Supp.2d at 204 (citing *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709 (2d Cir. 1987)).

■ To ensure the vacatur of Waggoner's attachment, SSBT was forced to defend against their repeated appeals to the Second Circuit. The damages on appeal were the proximate cause of the attach-

ment, and the Liquidator is entitled to all damages, including attorneys' fees and costs, sustained in this Court. *See Israel*, 270 N.Y.S.2d at 291 (awarding fees for defending against a series of appeals because "the very real threat of [the attachment's] reinstatement hung heavily"); *Trigo Hnos., Inc. v. Premium Wholesale Groceries, Inc.*, 424 F.Supp. 1125, 1134 (S.D.N.Y.1976) (awarding attorneys' fees incurred in the motion to vacate the attachment and in opposition to plaintiffs' motion for reargument on the vacatur where the original order of attachment was found to be "legally insufficient."); *see also Fantasy Records, Inc. v. Travelers Indemnity Co.*, 54 Misc.2d 799, 283 N.Y.S.2d 473, 476 (N.Y.Sup.Ct.1967) (awarding damages pursuant to C.P.L.R. 6212(e) upon dismissal of action for lack of standing and finding that the party contesting liability had "confuse[d] the requirement that the right to attachment be finally decided with a requirement that the underlying cause of action be determined on the merits.").

The State Attachment in no way diminishes the harm sustained by SSBT as a result of Waggoner's wrongful attachment in this action. SSBT incurred substantial expense in the District Court and in the Second Circuit as the direct result of Waggoner's wrongful attachment of their property in a forum lacking subject matter jurisdiction.

Regardless of where Waggoner pursues its claims in the future (either in the State Action or in the Bahamas), SSBT will necessarily bear the additional costs of defending against Waggoner's claims. However, the Liquidator is entitled to the damages incurred defending against Waggoner's repeated appeals to the Second Circuit, because it was only by defending against these appeals that the Liquidator was able to achieve the dismissal of this

action and the vacation of the wrongfully obtained Federal Attachment. *See Israel,* 270 N.Y.S.2d at 291.

Citing *Dinnerstein v. Max's Gas Station,* 172 Misc. 27, 13 N.Y.S.2d 1014, 1014–15 (N.Y.App. Term 1939), Waggoner previously argued that a defendant otherwise subject to a court's in personam jurisdiction is not entitled to damages pursuant to C.P.L.R. 6212(e). However, case law subsequent to *Dinnerstein* and commentary demonstrate the exact opposite. *See Hendricks v. Campbell,* 7 A.D.2d 949, 181 N.Y.S.2d 988, 991 (N.Y.App.Div.1959); *Israel,* 270 N.Y.S.2d at 283; Practice Commentary following N.Y. C.P.L.R. 6212(e), at 74–76 (McKinney 2007).

In *Hendricks,* the Court found that "although the attachment was unnecessary to obtain jurisdiction over [the defendant] it is nevertheless obvious that it was the attachment which induced [the defendant's] appearance in this action." 181 N.Y.S.2d at 991. Similarly, in *Israel,* the Court specifically rejected the plaintiff's "principal thesis" that a defendant "subject to personal service within the State cannot recover counsel fees incurred in attacking a wrongful attachment on the merits." 270 N.Y.S.2d at 286.

McKinney's practice commentary on C.P.L.R. 6212(e) also provides useful insight on the issue of "whether counsel fees are compensable in an action where the defendant is subject to in personam jurisdiction and the attachment is obtained not for jurisdiction, but for security." Practice Commentary following N.Y. C.P.L.R. 6212(e), at 75 (McKinney 2007). The practice commentary concludes that *Israel* "reaches an equitable result. If the plaintiff elects to tie up the defendant's property during the litigation, the plaintiff should pay all of the defendant's expenses to free the property." *Id.* at 76.

Here, just as in *Israel,* the damages proximately caused by Waggoner's Attachment should be "measured by the vigor with which [Waggoner] sought to sustain the attachment." 270 N.Y.S.2d at 291. Waggoner's strenuous objection for the past five years to the dismissal of this action in the District Court followed by its repeated appeals to this Court (despite the availability of the State Action and the existence of the State Attachment) indisputably demonstrate that the litigation in this matter was the direct and proximate result of Waggoner's attachment.

Waggoner has contended that this Court lacks subject matter jurisdiction to award damages to SSBT, because it has ruled that there was no subject matter jurisdiction over CSC's complaint. Opp. Br. at 1. The September, 2004 decision concluded otherwise. *See Correspondent Servs. Corp.,* 2004 WL 2181087, at *14–16.

Under Fed.R.Civ.P. 64, "the remedy of attachment is governed by state law," *id.* at *16, n. 6 (citing *Chemical Bank v. Haseotes,* 13 F.3d 569, 572 (2d Cir.1994)), and therefore "the manner provided by C.P.L.R. 6212(e) ... is the appropriate mechanism to assess SSBT's application" for damages. *Id.* (citing *Merck & Co. v. Technoquimicas S.A.,* No. 01 Civ. 5345, 2001 WL 963977, at *3 (S.D.N.Y. Aug.22, 2001) (holding that a party "[h]aving availed themselves [sic] of one subsection of § 6212 ... is bound by the provisions of § 6212(e) and, likewise, so is this Court.")); *Victrix,* 825 F.2d at 713 (holding that a party "having elected to avail itself of a state court remedy ... must accept the state court procedural rules applicable to the remedy it has sought" and thus may be liable for attorneys' fees for wrongful attachment).

Moreover, the September 2004 Opinion recognized that "[b]oth the Supreme Court and the Court of Appeals for the Second

Circuit have held that, under appropriate circumstances, a district court lacking jurisdiction over the merits of an action may nonetheless determine collateral issues flowing from the underlying action and the manner in which the parties litigated the action." 2004 WL 2181087, at *16. The Supreme Court has ruled that "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending," and specifically recognized the "imposition of. attorney's fees" as one example of such a "collateral issue." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *see also Valley Disposal Inc. v. Central Vermont Solid Waste Mgmt. Dist., Inc.*, 71 F.3d 1053, 1056 (2d Cir.1995) (recognizing "the Supreme Court's statement in *Cooter & Gell* that motions for attorney's fees raise collateral issues that 'may be made after the principal suit has been terminated.' ").

In concluding that the award of damages to SSBT pursuant to C.P.L.R. 6212(e) constituted a "collateral issue" over which it could exercise jurisdiction, this Court reasoned that:

> the assessment of costs and fees under C.P.L.R. 6212(e) following a dismissal for want of subject matter jurisdiction is proper under the circumstances presented here, because the conclusion that the attachment was wrongful is incidental to, closely related to, and necessarily flows from the determination that subject matter jurisdiction is lacking. . . .

2004 WL 2181087, at *16 (citing *Merck & Co.*, 2001 WL 963977, at *3).

█ The September 2004 Opinion held that the "conclusion that the attachment was wrongful 'implicates no constitutional concern because it does not signify a district court's assessment of the legal merits of the complaint.' " *Id.* (quoting *Willy v. Coastal Corp.*, 503 U.S. 131, 138, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992)). Similar decisions have been reached by multiple courts across the country. *See, e.g., Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 887 (9th Cir.2000) (holding that "the fact that plaintiffs' Complaint was dismissed with prejudice for lack of subject matter jurisdiction did not deprive the district court of jurisdiction to award defendant's attorneys' fees" under applicable state statute); *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 926 (7th Cir. 2000), *cert. denied*, 532 U.S. 994, 121 S.Ct. 1653, 149 L.Ed.2d 636 (2001) (reversing district court's holding that it lacked jurisdiction to award attorneys' fees after dismissal of action for lack of subject matter jurisdiction, because "courts that lack jurisdiction with respect to one kind of decision may have it with respect to another.") (citations and internal quotation marks omitted). Moreover, this Court's decision to award damages in the same action in which the wrongful attachment was obtained is consistent with applicable New York law. *See Merrill Lynch Futures, Inc. v. Morici*, No. 84 Civ. 2485, 1991 WL 206303, at *7 (S.D.N.Y. Oct.2, 1991) (holding there is "no reason why the liability under § 6212(e) cannot be enforced by motion in the action of which the attachment was obtained,") (quoting *Nagy v. Wood*, 95 A.D.2d 728, 729, 464 N.Y.S.2d 138 (N.Y.App.Div.1983)).

The cases cited by Waggoner, Opp. Br. at 4–5, in support of this Court's purported lack of jurisdiction to award attorneys' fees are distinguishable since they all concern an award of fees that first would have required the assessment of the merits of a claim over which the court lacked jurisdiction. In *Keene Corp. v. Cass*, the court concluded that a district court could not award attorneys' fees because it had no jurisdiction over a claim brought pursuant to 42 U.S.C. § 1988, which allows for the

award of fees only to a "prevailing party in a lawsuit brought to enforce a provision of section 1983." 908 F.2d 293, 297–98 (8th Cir.1990). The *Keene* court's award of fees was dependent upon an assessment of the merits of the plaintiff's 42 U.S.C. § 1983 claim, over which the court had no jurisdiction. In *W.G. ex rel. D.G. v. Senatore*, 18 F.3d 60, 64 (2d Cir.1994), the court, citing *Keene*, concluded that it lacked jurisdiction to award attorneys' fees pursuant to the Individuals with Disabilities Act ("IDEA"), which, similar to 42 U.S.C. § 1988, allows for an award of attorneys' fees only to a "prevailing party." *See id.* at 64–65; *see also* 20 U.S.C. § 1415(i)(3)(b)(i)(I). Thus, because the court had no jurisdiction to assess the merits of the IDEA claim, it had no jurisdiction to award fees pursuant to the IDEA.

The September 2004 Opinion recognized that unlike in *Keene* and *Senatore*, its award of damages to SSBT pursuant to C.P.L.R. 6212(e) was mandated by its vacatur of the Attachment and thus required no "assessment of the legal merits of the Complaint" over which it had no jurisdiction. *Correspondent Servs. Corp.*, 2004 WL 2181087, at *16 (quoting *Willy*, 503 U.S. at 138, 112 S.Ct. 1076). Such an award "does not raise the issue of a district court adjudicating the merits of a case or controversy over which it lacks jurisdiction." *Id.* (quoting *Willy*, 503 U.S. at 138, 112 S.Ct. 1076) (internal quotation marks omitted).

Alternatively, the September 2004 Opinion concluded that attorneys' fees and costs could be awarded pursuant to 28 U.S.C. § 1919 ("Section 1919"), which provides that a district court may order the payment of "just costs" upon the dismissal of an action. *Correspondent Servs. Corp.*, 2004 WL 2181087, at *15–16. Relying upon precedent from this Circuit and oth-

ers, the September 2004 Opinion held that attorneys' fees can be included in "'just costs' awarded under Section 1919" upon a "showing of extraordinary circumstances." *Id.* at *15 (citing *Wilkinson v. D.M. Weatherly Co.*, 655 F.2d 47, 49 (5th Cir. 1981); *Signorile v. Quaker Oats Co.*, 499 F.2d 142, 146 (7th Cir.1974); *Barron's Educ. Series, Inc. v. Hiltzik*, 987 F.Supp. 224, 225–26 (E.D.N.Y.1997); *Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.*, 305 F.Supp. 803, 810 (S.D.N.Y.1969)).

The September 2004 Opinion concluded that this matter constituted "extraordinary circumstances" because

the attachment of SSBT's assets—obtained under circumstances that suggest that Waggoner had reason to know that subject matter jurisdiction was lacking when it was, in fact, lacking—was wrongful, and as a result of the attachment SSBT has sustained a substantial financial burden by virtue of its lack of access to the funds at issue. These circumstances are sufficiently extraordinary to warrant the award of both costs and attorney's fees.

*Id.* at *16.

Waggoner has cited a series of cases declining to include attorneys' fees within an award of "just costs" under Section 1919. Opp. Br. at 2–4. However, even in the cases relied upon by Waggoner, the courts recognize that attorneys' fees are permitted in certain circumstances. *See, e.g., Signorile*, 499 F.2d at 145 (holding that "the question is whether there were any extraordinary circumstances in this case which would permit attorney's fees to be awarded to plaintiff."); *Wilkinson*, 655 F.2d at 49 (recognizing the "equitable allowance of attorney's fees in exceptional instances.").

Finally, Waggoner has cited *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141

(1975), for the contention that the award of attorneys' fees to SSBT would contravene Supreme Court precedent. Opp. Br. at 6. In *Alyeska Pipeline* the Supreme Court not only recognized the "inherent power in the courts to allow attorneys' fees in particular situations," but made clear that in a "diversity case … state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Id.* at 259 & n. 31, 95 S.Ct. 1612 (quoting 6 J. Moore, Federal Practice ¶ 54.77[2], pp. 1712–1713 (2d ed.1974)).

For the reasons set forth above, SSBT is statutorily entitled to damages pursuant to applicable state law, namely, C.P.L.R. 6212(e), which imposes strict liability for damages upon the vacatur of an attachment.

Waggoner has not disputed the multiple decisions rendered by this Court that, pursuant to C.P.L.R. 6212(e), SSBT is entitled to damages including attorneys' fees incurred since November 27, 2000, upon the dismissal of this matter for lack of subject matter jurisdiction. *See Correspondent Servs. Corp.,* 205 F.Supp.2d at 205 (holding that, pursuant to C.P.L.R. 6212(e), SSBT is entitled to damages including attorneys' fees incurred since November 17, 2000, upon the vacation of the attachment); *Correspondent Servs. Corp.,* 2003 WL 221746, at *2–3 (holding that both Waggoner and JVW are jointly and severally liable for SSBT's damages caused by their attachment and that the State Attachment did not disturb SSBT's entitlement to damages upon dismissal of the action); *Correspondent Servs. Corp.,* 2004 WL 2181087, at *2–3 (holding court had jurisdiction to award fees, adopting prior holdings, and finding dismissal of action mandated award of damages pursuant to C.P.L.R. 6212(e)).

The prior rulings on the subject were premised on fundamental precepts of New York law, and are the law of the case in this matter. *See In re PCH Assocs.,* 949 F.2d 585, 592 (2d Cir.1991) ("Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.").

Waggoner has also contended that the Liquidator chose to "litigate the merits without focusing on the jurisdictional defect," "willingly poured millions" into this litigation, and incurred substantial fees that "had nothing to do with the attachment or dismissal." Opp. Br. at 5, 7. Waggoner has thus contended that the "millions" incurred by SSBT were not caused "by reason of the attachment," and are therefore not recoverable pursuant to C.P.L.R. 6212(e).

However, it has previously been ruled that Liquidator is entitled to the attorneys' fees and costs incurred by SSBT since November 17, 2000, the date Waggoner wrongfully attached SSBT's assets. *See Correspondent Servs. Corp.,* 205 F.Supp.2d at 205. This holding, which the Court "adopted" in its September 2004 decision, *see Correspondent Servs. Corp.,* 2004 WL 2181087, at *16, also constitutes law of the case in this matter. *See In re PCH Assocs.,* 949 F.2d at 592.

Rule 6212(e) requires a determination to be made whether the attorneys' fees incurred were the "natural and proximate consequence of the wrongful attachment." *Israel,* 270 N.Y.S.2d at 286; *see also Thropp,* 255 N.Y. at 79–80, 174 N.E. 67. Because the only way the Liquidator could achieve the vacatur of the Attachment was to unearth the jurisdictional defect and then defend against Waggoner's efforts since 2001 to manufacture a basis for Federal jurisdiction, SSBT's fees, both before this Court and on appeal, were indeed proximately caused by reason of the at-

tachment. *See Israel,* 270 N.Y.S.2d at 291 (awarding fees for defending against a series of appeals and holding that damages caused by reason of the attachment should be "measured by the vigor with which [the attaching party] sought to sustain the attachment.").

As of July 3, 2001—the date the Liquidator first advised this Court of the lack of subject matter jurisdiction—the Liquidator had incurred less than $212,000 in fees and costs in this matter. *See* Wolfe Affirmation Ex. A. The Liquidator has incurred approximately $1,900,000 in additional fees and costs thereafter solely as a result of Waggoner's refusal to accept this Court's lack of subject matter jurisdiction. Indeed, as described above, Waggoner previously conceded that all fees and costs after July 2001 were incurred by the Liquidator solely to seek the dismissal of the action and argued that "July 2001 constitutes a bright-line starting point for the measure of SSBT's damages." *See* October 1, 2002 Memorandum of Law at 21 (Wolfe Affirmation Ex. B). The Liquidator is entitled to all of its attorneys' fees and costs incurred after July 2001.

Moreover, a substantial portion of the $212,000 incurred prior to July 3, 2001 was attributable to discovery that was necessary to prove what was known all along by Waggoner, namely, that the CD had no value. Indeed, Waggoner previously recognized that the facts concerning the value of the CD were "produced in discovery." *See* Caruso Letter at 7. (Wolfe Affirmation Ex. G). Nevertheless, Waggoner has now contended that these fees were unnecessarily incurred because SSBT "should have known, from the outset of this litigation that the CD was worthless." Opp. Br. at 7.

Contrary to Waggoner's contention, the discovery was necessary to establish that there was no basis for subject matter jurisdiction and was the direct result of the Attachment and Waggoner's effort to convince this Court it had jurisdiction. Moreover, Waggoner aggressively resisted the Liquidator's efforts to take the essential jurisdiction related discovery.

Contrary to Waggoner's contention, Waggoner elected to continue this matter since 2001, moving for summary judgment on the merits of their claims against SSBT during the pendency of the Liquidator's motion to dismiss. Waggoner has pursued two appeals to the Second Circuit and a petition the United States Supreme Court for a Writ of Certiorari asking to establish jurisdiction.

### SSBT is Entitled to Interest

█ Under New York law there is a presumption of damages for the loss of use of an attached asset, and courts use the legal measure of interest as the measure of that damage. *See Subin v. United States Fid. and Guar. Co.,* 12 A.D.2d 49, 51, 208 N.Y.S.2d 278 (N.Y.App.Div.1960); *Richman v. Richman,* 52 A.D.2d 393, 395, 384 N.Y.S.2d 220 (N.Y.App.Div.1976). Waggoner has not attempted to distinguish *Subin* or *Richman,* nor has it provided any authority to the contrary. Rather, Waggoner has contended that these precedents should be disregarded because they are from the Appellate Division (and therefore not binding on the Court) and that the exact opposite standard is applicable—that absent proof that the Liquidator would have earned any interest or profits had it possessed the $3,000,000, it is not entitled to damages.

█ However, "[w]here the high court has not spoken, the best indicators of how it would decide are often the decisions of lower state courts.... [W]hile a federal court is not bound by lower state court decisions, they do have great weight in informing the court's prediction on how

the highest state court of the state would resolve the question." *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 851 (2d Cir.1992) (citation and internal quotation marks omitted). Furthermore, in *Michalski v. Home Depot, Inc.*, the Second Circuit made clear that the decision of "an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by persuasive data that the highest court of the state would decide otherwise." 225 F.3d at 116 (quoting *West v. AT & T*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)).

■ Waggoner has never advanced any basis, let alone "persuasive data," that the New York Court of Appeals would disagree with *Subin* or *Richman*. Under New York law, there is no burden for SSBT to prove what interest it would have earned. Rather, as stated above, there is a presumption of damages for the loss of use of an attached asset, and the legal measure of interest is the measure of that damage. *See Subin*, 12 A.D.2d at 51, 208 N.Y.S.2d 278; *Richman*, 52 A.D.2d at 395, 384 N.Y.S.2d 220.

Waggoner has submitted that, under New York law, SSBT is not entitled to statutory interest for the loss of the use of its attached funds since November 17, 2000, because "pre-judgment interest is unavailable" on claims for punitive damages. Opp. Br. at 8.

Waggoner has not cited any precedent for the proposition that this punitive damages-focused principle is applicable to damages for the loss of use of attached assets under C.P.L.R. 6212(e). Neither has Waggoner distinguished the cases upon which the Liquidator has relied. *See Subin*, 12 A.D.2d at 51, 208 N.Y.S.2d 278; *Richman*, 52 A.D.2d at 395, 384 N.Y.S.2d 220.

The Liquidator is entitled to the statutory interest rate of 9% per year on the attached $3,000,000 from November 17, 2000 through the vacatur of the Attachment.

### A Stay is Not Warranted

Waggoner, relying upon an alleged right to "set off," has requested a stay of the payment of the damages owed to SSBT pursuant to C.P.L.R. 6212(e) "until the merits of the underlying litigation have been resolved." Opp. Br. at 9. No authority is cited for the proposition that Waggoner is entitled to set off its present liability to SSBT against its claims pending against SSBT in either New York state court or the Bahamas.

This Court has previously ruled that "SSBT will 'recover judgment' against Waggoner within the meaning of C.P.L.R. 6212(e) by reason of this Court's dismissal of the action...." *Correspondent Servs. Corp.*, 2003 WL 221746, at *2.

■ The *Minskoff* court ruled that damages were due upon the dismissal of the action, which constituted a final judgment on the merits of the wrongfully obtained attachment. *See* 28 A.D.2d at 87, 281 N.Y.S.2d 410. Moreover, Waggoner has no right to "set-off" its pending disputed and unliquidated claim against SSBT's present entitlement to damages owed pursuant to C.P.L.R. 6212(e). *See United States v. Robeson*, 34 U.S. 319, 325, 9 Pet. 319, 9 L.Ed. 142 (1835) ("a claim for unliquidated damages cannot be ... set-off"); *New Haven Properties, Ltd. v. Grinberg*, 293 A.D.2d 386, 387, 741 N.Y.S.2d 206 (N.Y.App.Div.2002) ("defendants cannot offset the subject liquidated, past due liability against the disputed, unliquidated liability it claims"); *Spodek v. Park Property Dev. Assocs.*, 263 A.D.2d 478, 478–79, 693 N.Y.S.2d 199 (N.Y.App.Div.1999) ("there is no right to set off a possible, unliquidated liability against a liquidated

claim that is due and payable."). Accordingly, there is no basis to "stay" the payment of damages presently due and owing to the Liquidator.

### Conclusion

As set forth in the November 30, 2006 Declaration of Jonathan W. Wolfe and its supporting documentation, the Liquidator was entitled to $2,102,870.48 in damages pursuant to C.P.L.R. 6212(e) for the attorneys' fees and costs incurred from November 17, 2000 through October 31, 2006. As detailed in the accompanying Wolfe Affirmation, the Liquidator has incurred substantial additional attorneys' fees and costs in this action and opposing Waggoner's petition the Supreme Court for a Writ of Certiorari.

In order to avoid multiple submissions, the Liquidator is directed to submit proof of any additional damages within thirty days.

Settle judgment on notice.

It is so ordered.